**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **VULCAN INDUSTRIAL HOLDINGS, LLC; CIZION, LLC d/b/a VULCAN INDUSTRIAL MANUFACTURING, LLC; and VULCAN ENERGY SERVICES, LLC** | § § § § § § | **CIVIL ACTION NO. _____** |
| **Plaintiffs,** | § § | |
| **v.** | § § | **JURY TRIAL DEMANDED** |
| **KERR MACHINE CO., MARK S. NOWELL, and KELCY JAKE FOSTER** | § § § § | |
| **Defendants.** | § § | |

## COMPLAINT

Plaintiffs Vulcan Industrial Holdings, LLC ("Vulcan Holdings"), Cizion, LLC d/b/a Vulcan Industrial Manufacturing, LLC ("Vulcan Manufacturing"), and Vulcan Energy Services, LLC ("Vulcan Services") files this Original Complaint against Defendant Kerr Machine Co. ("Kerr") and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, the patent laws of the United States, Title 35 of the United States Code, the Lanham Act, 15 U.S.C. § 1125(a), and Texas common law seeking declaratory judgment of non-infringement and invalidity of United States Patent No. 10,591,070 (the "070 Patent") and damages for tortious conduct.

## PARTIES

2.      Plaintiff Vulcan Holdings is a Delaware limited liability company with its principal place of business at 1990 Post Oak Blvd, Suite 2400, Houston, Texas 77056.

3.      Plaintiff Vulcan Manufacturing is a Delaware limited liability company with its principal place of business at 535 Simmon Drive, Osceola, Wisconsin 54020.

4.      Plaintiff Vulcan Services is a Delaware limited liability company with its principal place of business at 2107 East County Road 130, Bldg 5, Midland, Texas 79706.

5.      Defendant Kerr is a company organized and existing under the laws of Oklahoma, with its principal place of business at 2214 West 14th Street, Sulphur, Oklahoma 73086.

6.      Defendant Mark S. Nowell ("Nowell"), is the owner and chief executive officer of Kerr and resides at 424 Yorktown Road, Ardmore, Oklahoma 73401.

7.      Defendant Kelcy Jake Foster ("Foster") is the Chief Operating Officer of Kerr and resides at 575 Chateau Bend, Ardmore, Oklahoma 73401.

8.      Defendants Kerr, Nowell, and Foster will at time be referred to herein collectively as the Kerr Defendants.

## JURISDICTION AND VENUE

9.      This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202,  the patent laws of the United States, 35 U.S.C. § 1 *et seq*, and the Lanham Act, 15 U.S.C. § 112

10.     This court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

11.     Personal jurisdiction over Defendants is proper in this District because they have availed themselves of the rights and benefits of the laws of Texas, and have conducted business and have systematic and continuous contacts with Texas.

12.     Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants are subject to personal jurisdiction in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

## THE PATENT AT ISSUE

13.     The application for the '070 Patent for "Sealing High Pressure Flow Devices" was filed on September 18, 2019 and the patent issued on March 17, 2020. A copy of the '070 Patent is attached hereto as Exhibit A.

14.     The '070 Patent is directed to a fluid end assembly comprising a housing having an external surface and an internal chamber, and a first conduit formed in the housing and having first and second sections, each section independently interconnecting the internal chamber and the external surface.

## FACTUAL BACKGROUND

15.     Plaintiff Vulcan Holdings is a holding company that owns two operating companies, Vulcan Manufacturing and Vulcan Services. Vulcan Manufacturing engineers, manufactures, and sells a variety of products for various industries, including fluid ends for use in the oil and gas industry, crankshafts and sealrings for industrial use, and breech blocks for the aerospace industry. This case concerns fluid ends, which are components that are used to manage fluid flow in high pressure hydraulic fracturing operations. Vulcan Services offers repair services for certain oil and gas components, including fluid ends, and sells fluid end replacement components manufactured by various third parties.

16.     Defendant Kerr manufactures and sells fluid ends that compete with the fluid ends manufactured and sold by Vulcan Manufacturing. Kerr purports to be the owner of the '070 Patent. Defendants Nowell and Foster are officers of Kerr and are listed as the first two inventors of the '070 Patent.

17.     This lawsuit arises out of the Kerr Defendants' tortious and anti-competitive efforts to interfere with Plaintiffs' businesses. The Kerr Defendants engaged in a campaign to disparage the Vulcan companies and steal their customers by obtaining an invalid patent, accusing the Vulcan companies of violating that patent, and publishing that accusation to the Vulcan companies' customers to dissuade them from doing business with the Vulcan companies. All of that conduct was undertaken in bad faith.

18.     The Kerr Defendants engaged in inequitable conduct at the United States Patent and Trademark Office ("USPTO") in order to obtain the '070 Patent. In prosecuting the '070 Patent, the Kerr Defendants had in their possession certain prior art references that would have resulted in its patent application being rejected, but the Kerr Defendants concealed those references from the USPTO.

19.     Immediately after the '070 Patent was issued — which patent would not have issued but for Kerr's inequitable conduct — the Kerr Defendants contacted several Vulcan customers, including but not limited to BJ Services, PropPetro Services, Cudd Energy Services, and Evolution Well Services, and claimed that the Vulcan companies were infringing a valid Kerr patent and that Kerr intended to sue Vulcan for patent infringement. Further, Kerr publicized that it intended to seek damages from the Vulcan companies and to permanently enjoin the Vulcan companies from continuing to sell fluid ends to its customers.

20.     On March 19, 2020, Kerr filed a lawsuit against Vulcan Holdings accusing it of infringing the '070 Patent. Vulcan Manufacturing and Vulcan Services are not parties to that lawsuit.

21.     There is an actual controversy within the jurisdiction of this Court under 28 U.S.C §§ 2201 and 2202 concerning whether any acts by any of the Vulcan companies constitute infringement of the patent and whether the '070 patent is valid. Kerr has accused Vulcan Holdings of infringing the '070 Patent and filed a patent infringement lawsuit against Vulcan Holdings. In its lawsuit, Kerr specifically accuses the ICON EVO product that is manufactured by Vulcan Manufacturing of infringing the '070 Patent. Kerr also alleged that acts of infringement against the '070 Patent occurred in Midland, Texas, which is the location of Vulcan Services' service center. The Kerr Defendants have contacted customers of the Vulcan companies and told them that the Vulcan companies are infringing the '070 Patent in an attempt to interfere with the Vulcan companies' customer relationships.

22.     Based on the foregoing, a justiciable controversy exists between the Vulcan companies and Kerr as to whether Vulcan Holdings, Vulcan Manufacturing, or Vulcan Services are infringing the '070 Patent, whether the '070 Patent is valid and enforceable, and whether the Kerr Defendants are liable to the Vulcan companies for their tortious conduct and unfair competition.

23.     Absent a declaration of non-infringement, invalidity and/or unenforceability, Kerr will continue to wrongfully allege that the Vulcan companies infringe the 070 Patent and will continue to engage in tortious conduct to interfere with the Vulcan companies' customer relationships.

## COUNT I

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT

24.     Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

25.     Plaintiffs have not infringed and do not infringe any of the claims of the '070 Patent literally, under the doctrine of equivalents, directly, contributorily, by inducement, or in any other manner.

26.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Plaintiffs request a declaration of the Court that they have not infringed (and do not infringe), directly or indirectly, any  claim of the '070 Patent.

## COUNT II

## DECLARATORY JUDGMENT OF INVALIDITY

27.     Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein. Plaintiffs also incorporate the allegations in Count III, below, as though set forth herein.

28.     The claims of the '070 Patent are invalid for failing to comply with the conditions and requirements for patentability as set forth in the United States Patent Laws, Title 35 U.S.C § 101, *et seq*., including but not limited to §§ 102, 103 and/or 112.

29.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C §§ 2201-2202, Plaintiffs request a declaration of the Court that the claims of the '070 Patent are invalid.

## COUNT III

## DECLARATORY JUDGMENT OF THE UNENFORCEABILITY OF THE '070 PATENT DUE TO INEQUITABLE CONDUCT

30.     Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

31.     The '070 Patent is unenforceable due to inequitable conduct committed by Kerr and others during the prosecution of the '070 Patent.

32.     Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the USPTO. That duty includes a duty to disclose to the USPTO all information known to that individual to be material to the patentability of the claimed

invention. With respect to the prosecution of the '070 Patent, the duty of disclosure and good faith was owed by Kerr and at least each of the purported inventors, including Nowell and Foster. A breach of a patent applicant's duty of candor that rises to inequitable conduct renders unenforceable all claims of the patent that eventually issues from the application. Inequitable conduct may also infect and render unenforceable the claims of descendant patents.

33.     Kerr and the purported inventors of the '070 Patent committed inequitable conduct during the prosecution of the 070 Patent by making the deliberate decision, in bad faith, to withhold material prior art, including but not limited to U.S. Patent No. 6,544,012 to Blume (the "Blume '012 Patent"), in order to obtain a patent. They also withheld other material information from the USPTO, including but not limited to the existence of Kerr's co-pending patent applications that were related to and/or directed to similar technology as the '070 Patent.

34.     While the '070 Patent was still pending before the USPTO, Kerr filed several patent applications that reference the Blume '012 Patent, but Kerr intentionally withheld that reference from the patent examiner during prosecution of the '070 Patent.

**Kerr's Related Patent Applications**

*The Kerr '950 Patent Application*

35.     On August 24, 2017, Kerr filed U.S. Patent App. No. 15/685,167 ("the Kerr '950 Patent Application"), titled "Modular Gland Arrangements For A Fluid End Assembly," which issued into U.S. Patent No. 10,519,950 ("the Kerr '950 Patent). The Inventor's Declaration (37 C.F.R. § 1.63) was executed by Foster and submitted to the USPTO on September 7, 2017. The Power of Attorney (37 C.F.R. 3.73(c)) dated February 28, 2017, designating Kerr as the Applicant was signed by Nowell.

36.     The Kerr '950 Patent Application was assigned to patent examiner Thomas E. Lazo.

37.     On November 10, 2017, Kerr filed an Information Disclosure Statement ("IDS") listing one prior art reference: U.S. Patent No. 9,732,746 to Chandrasekaran ("Chandrasekaran"). Chandrasekaran cites the Blume '012 Patent on its face, indicating Kerr was aware of the Blume '012 Patent as of that date.

38.     Kerr further disclosed in the November 10, 2017 IDS, "[i]n compliance with the duty of disclosure prescribed by 37 C.F.R. § 1.56," the following four exhibits:

- Exhibit A includes cross-sectional views of fluid end assemblies known in the art prior to August 25, 2016.

- Exhibit B includes side views of valve seats known in the art prior to September 29, 2015.

- Exhibit C is a cross-sectional view of a plunger end of a fluid assembly known in the art prior to September 29, 2015.

- Exhibit D includes an engineering drawing and pictures of a mud pump known in the art prior to September 29, 2015.

39.     The USPTO issued a non-final office action on February 25, 2019, rejecting or objecting to all claims 1-22. Claims 1-3, 6, 14-16, 19, and 20 were rejected as anticipated by US2011/0189040 ("Vicars 2011"). Also attached to the office action was a Notice of References Cited, which listed several prior art references cited by the Examiner, including the Blume '012 Patent:

- US2011/0189040 ("Vicars 2011");

- US2006/0002806 ("Baxter 2006");

- U.S. Patent No. 6,910,871 ("the Blume '871 Patent");

- U.S. Patent No. 6,544,012 ("the Blume '012 Patent"); and

- U.S. Patent No. 7,335,002 ("the Vicars '002 Patent").

The office action noted that "[p]rior art made of record but not relied upon is considered pertinent to Applicant's disclosure, specifically the disclosure of multiple plungers in the fluid end assembly with individual sets of conduits for each plunger." The USPTO thus specifically identified the Blume '012 Patent in its office action against the Kerr '950 Patent Application and the Kerr Defendants had actual notice of the Blume '012 Patent at least as early as February 25, 2019.

40.     The Kerr '950 Patent ultimately issued on December 31, 2019.

*The Kerr '446 Application*

41.     On May 24, 2019, Kerr filed U.S. Patent App. No. 16/422,446 ("the Kerr '446 Application"), titled "Fluid End Plug With Bore Clearance," which application is still pending before the USPTO. The Inventor's Declaration (37 C.F.R. § 1.63) was executed by Nowell, as the first-named inventor, and filed on July 9, 2019. Foster is the second-named inventor. The Power of Attorney (37 C.F.R. 3.73(c)) designating Kerr as the Applicant was signed by Nowell and dated February 28, 2017.

42.     The Kerr '446 Application was assigned to patent examiner Devon Kramer.

43.     The IDS for the Kerr '446 Application, dated and filed on October 18, 2019, cites the Blume '012 Patent.

*The Kerr '139 Application*

44.     On December 20, 2019, Kerr filed U.S. Patent App. No. 16/722,139 ("the Kerr '139 Application"), titled "Modular Gland Arrangements For A Fluid End Assembly," which application is still pending before the USPTO. The Inventor's Declaration (37 C.F.R. § 1.63) was executed by Foster and filed with the USPTO on December 20, 2019. The Power of Attorney (37 C.F.R. 3.73(c)) designating Kerr as the Applicant was signed by Nowell and dated February 28, 2017.

45.     The Kerr '167 Application was also assigned to patent examiner Thomas E. Lazo.

46.     The IDS for the Kerr '167 Application, dated and filed on December 20, 2019, cites the Blume '012 Patent.

### Kerr's Prior Knowledge of the Blume '012 Patent

47.     The Kerr Defendants had knowledge of the Blume '012 Patent at least as early as February 25, 2019, if not earlier, as a result of it being cited in an office action during the prosecution of the Kerr '950 Patent. Thus, the Kerr Defendants had knowledge of the Blume '012 Patent prior to the filing of the Kerr '070 Patent Application on September 18, 2019.

48.     The Kerr Defendants were further aware of the Blume '012 Patent during the pendency of the Kerr '070 Patent Application. Kerr cited the Blume '012 Patent during the prosecution of two co-pending patent applications: the Kerr '446 Application and the Kerr '139 Application. Kerr listed the Blume '012 Patent in the Kerr '446 Application IDS dated October 18, 2019, and in the Kerr '139 Application IDS dated December 20, 2019.

49.     Kerr's co-pending patent applications were directed to technology related and/or similar to that claimed in the Kerr '070 Patent. But, on information and belief, during its prosecution of the '070 patent, the Kerr Defendants never disclosed any of Kerr's co-pending patent applications or the existence of the Blume '012 Patent to the patent examiner responsible for reviewing the '070 Patent Application.

### Prosecution History of the Kerr '070 Patent

50.     On September 18, 2019, Kerr filed U.S. Patent App. No. 16/574,918 ("the Kerr '070 Patent Application"), titled "Sealing High Pressure Flow Devices," which issued into the Kerr '070 Patent on March 17, 2020.

51.     The Kerr '070 Patent Application was a divisional application of U.S. Patent App. No. 15/719,124, filed on September 28, 2017, which is a continuation-in-part of U.S. Patent App. No. 15/280,642, filed on September 29, 2016, which issued into U.S. Patent No. 10,288,178 ("the Kerr '178 Patent"), and claims the benefit of the following four provisional applications: 62/346,915 filed on June 7, 2016; 62/318,542 filed on April 5, 2016; 62/315,343 filed on March 30, 2016; and 62/234,483 filed on September 29, 2015.

52.     PCT/US16/54499, filed on September 29, 2016, claims priority to the provisional application 62/315,343. An International Search Report ("ISR") was issued on December 9, 2016, listing prior art references material to the patentability of the PCT application.

53.     The Inventor's Declaration (37 C.F.R. § 1.63) was executed by Nowell, as the first-named inventor, and filed with the USPTO on September 18, 2019.  Foster was listed as the second-named inventor. The following were also named as additional joint inventors: Michael May, Brandon Ayres, Christopher Barnett, Michael Thomas, and Guy Lapointe.

54.     The Power of Attorney (37 C.F.R. 3.73(c)) designating Kerr as the Applicant was signed by Nowell and filed with the USPTO on September 18, 2019.

55.     The Kerr '070 Application was assigned to patent examiner John Bastianelli.

56.     On September 18, 2019, Kerr filed an IDS, again listing just Chandrasekaran, as well as the following exhibits:

- Fluid end assemblies like those disclosed in Figure 11 of the current application and Figure 11 of the parent application, U.S. Patent Publication No. 2017/0089473, were offered for sale in the United States more than 1 year prior to September 28, 2017.

- Exhibit A includes cross-sectional views of fluid end assemblies known in the art prior to September 29, 2015.

- Exhibit B includes side views of valve seats known in the art prior to September 29, 2015.

11

- Exhibit C is a cross-sectional view of a plunger end of a fluid assembly known in the art prior to September 29, 2015.

- Exhibit D includes an engineering drawing and pictures of a mud pump known in the art prior to September 29, 2015.

57.     On November 26, 2019, the USPTO issued a non-final office action rejecting all claims 1-20 as anticipated by the Blume '940 Patent. Also attached to the office action was a Notice of References Cited, which Notice listed many prior art references, including:

- U.S. Patent No. 6,382,940 ("the Blume '940 Patent")

- U.S. Patent No. 7,513,759 ("the Blume '759 Patent")

- U.S. Patent No. 7,168,440 ("the Blume '440 Patent")

58.     In rejecting claims 1-6, 9-13, and 16-20 as anticipated by the Blume '940 Patent, the Examiner stated the following:

> Regarding claim 1, Blume discloses a fluid end assembly (Figs. 1 and 3-5), comprising: a housing (Figs. 1 and 3-5) having a first conduit (Figs. 1 and 3-5, one of the conduits in which the Valves and Seats are in) extending therethrough, and a second conduit (Figs. 1 and 3-5, the conduit in which the Plunger is in) extending therethrough that intersects the first conduit; an endless groove (endless groove is where the Packing and Packing Brasses are located with one wall of the groove is where the left Packing Brass is and the other wall is either the threads from connecting the Gland Nut as they are raised and extend into the Gland Nut or the Gland Nut is seen as part of the housing as it is rigidly connected to it and the left end of the Gland Nut is the other wall of the groove) formed in the housing such that the groove surrounds the second conduit; a seal (Packing) positioned within the groove; a tubular sleeve (Packing Brass that is right of the Packing) installed within the second conduit such that at least a portion of the sleeve engages with the seal (Figs. 1 and 3-5, the right Packing Brass engages the Packing); and a reciprocating plunger (Plunger) disposed at least partially within the sleeve (Figs. 1 and 3-5).

59.     On January 6, 2020, in order to overcome the rejections, Kerr filed its arguments in response to the office action, and stated the following:

Blume discloses a fluid end having a plurality of packing seals installed directly within one of the conduits. The packing seals are compressed on opposite sides by packing brass. A plunger is disposed within the packing seals and the packing brass. Blume, Figures 1 and 5. Blume is constructed similar to the prior art fluid end shown in FIG. 9.  The Examiner cited the "groove" required by claim 1 as the walls surrounding the packing seals and packing brass. The Examiner cited the "seal" as one of the packing seals, and the "tubular sleeve" as the packing brass. Claim 1 requires "a plurality of packing seals disposed within the sleeve". The packing seals disclosed in Blume are sandwiched between the packing brass. The packing seals are not "disposed within" the packing brass. Only the plunger is disposed within the packing brass. Thus, Blume does not teach or disclose this feature and claim [1] is not anticipated by Blume. If a "tubular sleeve" were added to Blume to house the packing seals and packing brass, Blume would not disclose the required feature of "a seal positioned within the groove." Rather, the "tubular sleeve" would now be positioned within the Examiner's "groove". Blume does not teach or disclose another groove and seal within the plunger bore like the groove 257 and seal 258 shown in Applicants' Figures 13 and 17. For the above reasons, the rejection of claim 1 should be withdrawn.

60.     Kerr also filed an amendment on January 6, 2020, to include a new figure, Fig. 17, as shown below:



*Fig. 17 of the Kerr '070 Patent*

61.     Kerr made an intentionally limited argument in response to the office action, addressing only the Blume '940 Patent, despite its knowledge of the Blume '012 Patent. According to Kerr's

arguments, the purported novel feature of the Kerr '070 Patent distinguishing it from the Blume '940 Patent is the sleeve with the packing seals and the location of the seal in the housing.

62.     Although the Blume '940 Patent does not disclose these features, the Blume '012 Patent expressly discloses, as shown in Fig. 12B below, a sleeve with packing seals and a seal located in the housing.



*Fig. 12B of the Blume '012 Patent*

63.     On February 3, 2020, the USPTO issued a Notice of Allowability for the Kerr '070 Patent Application, and the Kerr '070 Patent issued on March 17, 2020.

64.     The Kerr Defendants were aware that the Blume '012 Patent disclosed a sleeve with packing seals and a seal located in the housing. Thus, the Kerr Defendants were aware that the Blume '012 Patent was material to the patentability of the Kerr '070 Patent.

65.     On information and belief, in deliberately deciding to withhold the Blume '012 Patent during prosecution of the '070 Patent Application, the Kerr Defendants acted with intent to deceive the USPTO. As alleged above, the Kerr Defendants had knowledge of the existence of the Blume '012 Patent prior to the filing of and during the pendency of the prosecution of the Kerr '070 Patent. Kerr cited the Blume '012 Patent in connection with other related co-pending patent

applications, but it intentionally withheld it from the patent examiner that was reviewing the Kerr '070 Patent Examiner.

66.     The Kerr '070 Patent would not have issued but for Kerr withholding the Blume '012 Patent during prosecution of the Kerr '070 Patent Application. The Blume '012 Patent disclosed a sleeve with packing seals and a seal located in the housing. A reasonable patent examiner would have considered the Blume '012 Patent to be material to the Kerr '070 Patent Application.

67.     On information and belief, the Kerr Defendants made a deliberate decision not to disclose the Blume '012 Patent to the patent examiner because of its materiality to the patentability of the Kerr '070 Patent. Kerr would not have been able to make the argument to overcome the rejection based on the Blume '940 Patent if the Blume '012 Patent was disclosed to the patent examiner.

68.     Furthermore, the Blume '012 Patent expressly discloses all the limitations of each of the independent claims 1 and 6 of the Kerr '070 Patent. The Blume '012 Patent anticipates and/or renders obvious, either alone or in combination with prior art before the patent examiner during prosecution of the Kerr '070 Patent, all claims 1-24 of the Kerr '070 Patent.

69.     Had the Blume '012 Patent properly been disclosed to the patent examiner, the Kerr '070 Patent would not have issued or would not have issued in its current form.

70.     The Kerr Defendants breached their duty of disclosure and candor by virtue of their failure to disclose the Blume '012 Patent in connection with the '070 Patent Application. The Kerr Defendants knew of the Blume '012 Patent, knew that it was material, and deliberately decided to withhold it.

71.     Nowell and Foster, individually and collectively were and still are corporate officers of Kerr, are listed as co-inventors of the Kerr '070 Patent, are co-inventors of the Kerr '446 Application, substantively and actively participated in the obtaining of the Kerr '070 Patent, and,

on information and belief, individually and corporately breached their duty of disclosure and candor to the USPTO in bad faith and with deceptive intent by failure to disclose the Blume '012 Patent to the USPTO during the pendency of the Kerr '070 Patent before the USPTO.

72.     Foster also is the sole inventor of the Kerr '950 Patent, in which the Blume '012 Patent was cited, and substantively and actively participated in the obtaining of the Kerr '950 Patent. Foster is also the sole inventor of the pending Kerr '139 Application, in which the Blume '012 Patent is likewise cited, and, on information and belief, individually breached his duty of disclosure and candor to the USPTO in bad faith and with deceptive intent by failure to disclose the Blume '012 Patent to the USPTO while the Kerr '070 Patent was pending before the USPTO.

**Conduct in Other Patent Prosecutions and Post-Prosecution of the Kerr '070 Patent**

73.     Kerr has further shown a pattern of nondisclosure of material information during the prosecution of other related patent applications.  For example, upon information and belief, there is not a single instance where Kerr disclosed to the USPTO the existence of a co-pending application related to or similar to the technology claimed in the Kerr '070 Patent. As another example, upon information and belief, Kerr did not disclose the existence of the ISR during prosecution of any of the applications in the Kerr '070 Patent family.

74.     During prosecution of the Kerr '178 Patent (grandparent of the Kerr '070 Patent), Kerr submitted declarations to the USPTO in order to overcome a rejection. On October 25, 2018, Kerr filed the Declaration of Guy J. Lapointe Under 37 C.F.R. 1.132 dated October 17, 2018 (the "Lapointe Declaration"), and the Declaration of Keith Gibson Under 37 C.F.R. § 1.132 dated October 25, 2018 (the "Gibson Declaration"). Despite being a named inventor of the Kerr '070 Patent, Lapointe attests in his declaration that he is "not an inventor" of the related Kerr '178 Patent. Both Lapointe and Gibson state in their respective declarations that they believe it is

"impossible" to put a groove in the bore. However, at the time the declarations were filed, the ability to put a groove in the housing or bore was well known not only to a person skilled in the art, but also to Lapointe, Gibson, and Kerr. Indeed, the placement of a groove in the housing or bore is shown in numerous prior art references known to Kerr prior to the filing of the Lapointe and Gibson Declarations. Kerr, consistent with its pattern of nondisclosure of material information, did not disclose any such prior art references to the USPTO.  For example, in U.S. Patent No. 2,756,960 to Church, which was listed in the ISR as a material anticipatory reference, the so-called "impossible" feature of a groove and seal in the housing is clearly shown (circled in red):



75.     On information and belief, the Kerr '178 Patent would not have issued or would not have issued in its current form but for the misrepresentations of material fact in the Lapointe and Gibson Declarations.

76.     Kerr knew that the Lapointe and Gibson Declarations were misrepresenting the existing prior art with respect to the placement of a groove in the bore or housing, and that such misrepresentations were material to the patentability of the Kerr '178 Patent.

77.     Kerr made a deliberate decision to file the Lapointe and Gibson Declarations.

78.     There is an immediate and necessary relationship between Kerr's inequitable conduct during prosecution of the Kerr '178 Patent and the enforcement of the Kerr '070 Patent because the Kerr '070 Patent is a descendant of the Kerr '178 Patent and the Kerr '070 Patent claims subject matter that overlap with and/or is at least similar to the Kerr '178 Patent.

79.     Kerr breached its duty of disclosure and candor by virtue of its misrepresentations of material fact in the Lapointe and Gibson Declarations.

80.     Nowell and Foster, individually and collectively were and still are corporate officers of Kerr, are listed as co-inventors of the Kerr '178 Patent, substantively and actively participated in the obtaining of the Kerr '178 Patent, and, on information and belief, breached their duty of disclosure and candor to the USPTO in bad faith and with deceptive intent by making misrepresentations of material fact to the USPTO during the pendency of the Kerr '178 Patent before the USPTO.

81.     On information and belief, Kerr orchestrated a scheme to deceptively obtain the Kerr '070 Patent for the primary purpose of suing Vulcan. On information and belief, Kerr had in its possession accused products manufactured by Vulcan Manufacturing prior to the filing of the Kerr '070 Patent Application.

82.     Kerr filed a lawsuit accusing Vulcan Holdings on March 19, 2020, just two days after the Kerr '070 Patent issued. On the same day, Kerr posted the following to the home page of its website:

**FOR IMMEDIATE RELEASE**                                      MARCH 19, 2020

On March 19, 2020, Kerr Pumps sued Vulcan for patent infringement alleging that various Vulcan fluid ends infringe Kerr's U.S. Patent No. 10,591,070.

Kerr's complaint alleges that Vulcan's fluid ends, including but not limited to those sold under the brand name of Icon Evo, specifically infringes the Kerr patent.

Kerr is seeking damages for infringement, and is seeking a permanent injunction against Vulcan – such an injunction would prevent Vulcan from manufacturing or selling infringing fluid ends and infringing fluid end components.

Kerr has filed dozens of patent applications with the United States Patent and Trademark Office in order to protect its inventions and intellectual property.

Kerr Pumps premium fluid ends contain all of the latest innovations and represent the best value for pressure pumping operations.

Please direct all inquiries regarding Kerr's products and services to:

Jake Foster 580-222-8306
Jackson Wheat 501-690-3622
Bobby Shelton 580-618-3059

83.     The Kerr Defendants also called the Vulcan companies' customers to inform them of the lawsuit and interfere with the Vulcan companies' business and business relationships.

84.     On information and belief, the Kerr Defendants are engaging in unlawful anti-competitive conduct in enforcing the Kerr '070 Patent, which was obtained fraudulently.

85.     These misrepresentations and omissions by the Kerr Defendants were material because Kerr failed to disclose non-cumulative invalidating prior art and information regarding that art that would have by itself or in combination with other information established a prima facie case of unpatentability of the claims of the Kerr '070 Patent. Kerr committed these acts with the intent to deceive the USPTO in order to obtain the Kerr '070 Patent.

86.     Accordingly, Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 that the '070 Patent is unenforceable as a result of Kerr's inequitable conduct.

## COUNT IV

### TORTIOUS INTERFERENCE WITH ACTUAL AND PROSPECTIVE BUSINESS RELATIONS

87.     Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

88.     Prior to Kerr publicly accusing the Vulcan companies of infringing the Kerr '070 patent and filing a lawsuit against Vulcan Holdings, Vulcan Manufacturing and Vulcan Services sold and serviced, respectively, fluid ends for several customers on a regular basis, including but not limited to BJ Services, ProPetro Services, Cudd Energy Services, and Evolution Well Services.

89.     Kerr is a competitor to the Vulcan companies, and, upon information and belief, the Kerr Defendants aware of the ongoing supplier relationships the Vulcan companies have with their customers

90.     Upon information and belief, the Kerr Defendants intentionally interfered with the Vulcan companies' established customer relationships and sales by (i) wrongfully obtaining the Kerr '070 Patent by engaging in inequitable conduct before the USPTO; (ii) filing a patent infringement lawsuit against Vulcan Holdings, (iii) publicly disseminating a press release through its website that accused the Vulcan companies of infringing the Kerr '070 patent and threatened to enjoin the Vulcan companies from selling fluid ends to their customers, and (iv) personally reaching out to several customers of the Vulcan entities shortly after obtaining the patent and filing a lawsuit to inform them that the Vulcan companies are infringing its patent and that Kerr is suing Vulcan Holdings, while also intimating that the customers themselves may infringe the Kerr patent if they use the Vulcan companies' products. The representations that Kerr has a valid patent and that the Vulcan companies are infringing a valid patent were made in bad faith.

91.     Upon information and belief, the Kerr Defendants have, in bad faith, publicized Kerr's allegations that the Vulcan companies infringe the Kerr '070 patent and has specifically informed and/or threatened customers and potential customers of Vulcan Manufacturing and Vulcan Services concerning those allegations, with the intent and effect of dissuading those customers from doing business with Vulcan Manufacturing and Vulcan Services.

92.     Upon information and belief, the Kerr Defendants' actions have successfully dissuaded certain customers and potential customers from purchasing fluid ends from Vulcan Manufacturing and from doing business with the Vulcan companies. The Kerr Defendants intentionally and improperly interfered with the Vulcan companies' customer relationships and sales by filing a lawsuit against Vulcan Holdings and by communicating false allegations that the Vulcan companies are infringing a valid Kerr patent to the customers of the Vulcan companies. The Kerr Defendants seek to obtain a competitive advantage for Kerr by improperly attempting to enforce a patent that the Kerr Defendants know is invalid and/or unenforceable.

93.     Plaintiffs have suffered a loss of business and prospective business relations as a direct result of the Kerr Defendants' conduct towards the Vulcan companies.

**COUNT V**

**UNFAIR COMPETITION**

94.     Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

95.     The Kerr Defendants obtained an invalid patent through inequitable conduct, contacted customers of the Vulcan companies to accuse Vulcan of infringing that invalid patent, publicized that alleged infringement and claimed that KJerr was going to enjoin the Vulcan companies from conducting their businesses, and then sued Vulcan Holdings for infringing the invalid patent.  That

tortious conduct interfered with the Vulcan companies' ability to conduct their businesses and has proximately caused harm to the Vulcan companies.

## COUNT VI

## BUSINESS DISPARAGEMENT

96.     Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

97.     The Kerr Defendants made false and disparaging statements about the Vulcan companies when the Kerr Defendants contacted customers of the Vulcan companies. Specifically, the Kerr Defendants stated that the Vulcan companies were infringing a valid Kerr patent. The Kerr Defendants also made false and disparaging statements by publicizing a press release on its website stating that Vulcan companies was infringing a valid Kerr patent and Kerr was going to obtain an injunction and damages against the Vulcan companies.

98.     The Kerr Defendants made the false and disparaging statements about the Vulcan companies with malice. At the time the Kerr Defendants stated to customers and in public statements that the Vulcan companies were infringing a Kerr patent, they knew that Kerr had obtained the Kerr '070 Patent through deceit and that it was therefore invalid. The Kerr Defendant's statements to the customers of the Vulcan companies, and the statements in the press release published on the Kerr website, are not privileged and have proximately caused harm to the Vulcan companies and their business relationships.

## COUNT VII

## VIOLATION OF SECTION 43(A) OF THE LANHAM ACT (15 U.S.C.A. § 1125)(A)

99.     Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

100.    The Kerr Defendants made false and misleading statements of fact about the Vulcan companies' products by stating to the Vulcan companies' customers and publicizing on Kerr's

website that the Vulcan companies were infringing a valid Kerr patent and that Kerr intended to recover damages and obtain an injunction against the Vulcan companies. Those statements were likely to deceive, and on information and belief did deceive, customers of the Vulcan companies and dissuaded them from buying fluid ends from Vulcan Manufacturing. Wrongfully accusing a competitor of infringing a patent that was obtained by deceit is material and is likely to affect, and on information has affected, purchasing decisions made by the customers of the Vulcan companies. The Vulcan companies have suffered harm as a result in the form of lost sales and damage to their reputation.

## COUNT VIII

## ATTORNEYS' FEES AND COSTS

101.    Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

102.    Plaintiffs are entitled to a declaration that this is an "exceptional" case within the meaning of 35 U.S.C § 285, entitling Plaintiffs to an award of their reasonable and necessary attorneys' fees, expenses, and costs incurred in this action. Plaintiffs are also entitled to recovery their reasonable and necessary attorneys' fees, expenses, and costs under section 35 of the Lanham Act, 15 U.S.C. § 1117(a).

## JURY DEMAND

103.    Plaintiffs hereby request a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiffs request judgment against the Kerr Defendants as follows:

a.    A declaration and judgment that Vulcan Holdings, Vulcan Manufacturing, and Vulcan Services have not infringed and do not infringe, directly or indirectly, any valid claim of U.S. Patent No. 10,591,070;

b.    A declaration and judgment that the claims of U.S. Patent No. 10,591,070 are invalid;

c.  A declaration and judgment that U.S. Patent No. 10,591,070 is unenforceable due to Kerr's inequitable conduct;

d.  That Kerr, and all persons acting on its behalf or in concert with it, be permanently enjoined and restrained from charging, orally or in writing, that U.S. Patent No. 10,591,070 is infringed, directly or indirectly, by Vulcan Industrial, Vulcan Manufacturing, or Vulcan Services;

e.  Awarding actual and punitive damages to Vulcan Industrial, Vulcan Manufacturing, and Vulcan Services for the Kerr Defendants' tortious interference with their actual and prospective business relations, unfair competition, and business disparagement;

f.  Awarding actual and punitive damages to Vulcan Industrial, Vulcan Manufacturing, and Vulcan Services for the Kerr Defendants' violations of the Lanham Act, including any profits Kerr obtained by diverting customers from the Vulcan companies to Kerr;

g.  A declaration and judgment that Plaintiffs are the prevailing parties and this case is exceptional within the meaning of 35 U.S.C. § 285 and 15 U.S.C § 1117(a);

h.  An award of reasonable attorneys' fees, expenses and costs incurred by Plaintiffs in this lawsuit; and

i.  Such other and further relief as this Court deems just and proper.

Dated:  May 27, 2020

Respectfully submitted,

By: /s/ *Jean C. Frizzell*
       Jean C. Frizzell
       State Bar No. 07484650
       Federal ID No. 14529
**REYNOLDS FRIZZELL LLP**
1100 Louisiana, Suite 3500
Houston, Texas  77002
Email: jfrizzell@reynoldsfrizzell.com
Telephone:  (713) 485-7200
Facsimile:  (713) 485-7250

**ATTORNEY IN CHARGE**
**FOR PLAINTIFFS VULCAN**
**INDUSTRIAL HOLDNGS, LLC,**
**CIZION, LLC D/B/A VULCAN**
**INDUSTRIAL MANUFACTURING,**
**LLC, AND VULCAN ENERGY**
**SERVICES, LLC**

**OF COUNSEL**

Jeremy L. Doyle
State Bar No. 24012553
Federal ID No. 24559
Adi Sirkes
State Bar No. 24117059
Federal ID No. 3513896
**REYNOLDS FRIZZELL LLP**
1100 Louisiana, Suite 3500
Houston, Texas  77002
Email: doyle@reynoldsfrizzell.com
Email: asirkes@reynoldsfrizzell.com
Telephone:  (713) 485-7200
Facsimile:  (713) 485-7250

Jeffrey S. Whittle
State Bar No. 24037813
Federal ID No. 991796
**WOMBLE BOND DICKINSON (US) LLP**
811 Main Street, Suite 3130
Houston, Texas  77002
Email: Jeffrey.Whittle@wbd-us.com
Telephone:  (346) 998-7859

Barry J. Herman (pro hac vice to be filed)
State Bar No.
Maryland Federal ID No. 26061
**WOMBLE BOND DICKINSON (US) LLP**
100 Light Street, 26th Floor
Baltimore, MD 21202
Email: Barry.Herman@wbd-us.com
Telephone:  (410) 545-5830